UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>MOHAMED HASSAN,<br><br>            Defendant. | Mr. Hassan's Reply<br><br>22 cr. 464 (AMD) |

**MR. MOHAMED HASSAN'S REPLY
IN SUPPORT OF HIS POST-TRIAL MOTIONS**

 

Varghese & Associates, P.C.
2 Wall Street
New York, NY 10005
(212) 430-6469
info@vargheselaw.com

By:   Vinoo P. Varghese
Stephen Chahn Lee (*of counsel*)
Dennis J. Ring (*of counsel*)

*Counsel for Mr. Mohamed Hassan*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENTS................................................................................................................................ 1

I.  THE GOVERNMENT IGNORES COUNSEL'S ARGUMENT THAT IT MISSTATED THE EVIDENCE IN SUMMATION; THERE, THE GOVERNMENT MADE THREE CLAIMS WITHOUT EVIDENCE THAT LED TO THE MANIFEST INJUSTICE OF MR. HASSAN'S CONVICTION ................................................................................................. 1

    A.  The Government Made Arguments In Summation That It Had *No* Evidence For . 1

    B.  In Its Response, The Government Ignores Counsel's Argument That It Misstated The Evidence In Summation................................................................................... 1

    C.  In Its Response, The Government *Again* Misstates The Evidence When It Claims That Mr. Hassan Personally Filled Linden Medical Prescriptions For More Than Fifty People ............................................................................................................ 2

    D.  The Government's Misstatement Of The Evidence Clearly Led To A Conviction It Did *Not* Deserve And Led To A Manifest Injustice ................................................ 4

II. THE GOVERNMENT MISSTATES THE LAW REGARDING THE CONSCIOUS AVOIDANCE INSTRUCTION AND RULE 404(B) ........................................................ 5

    A.  The Government Misstates The Law Regarding The Conscious Avoidance Instruction ............................................................................................................... 5

        1.  The government sets up a straw-man version of counsel's argument ....... 5

        2.  The government fails to address that a conscious avoidance instruction must meet a two-part standard................................................................... 6

        3.  Despite its claims, the government can *not* meet the two-part standard; it can *not* establish a factual predicate .......................................................... 6

    B.  The Government Misstates The Law Regarding Rule 404(b) ............................... 8

        1.  The government sets up another straw-man version of counsel's argument ................................................................................................................... 8

        2.  Optimization evidence should *not* have been admitted as "inextricably intertwined" under Rule 404(b)................................................................. 8

        3.  Optimization evidence should *not* have been admitted as background information under Rule 404(b).................................................................. 8

        4.  Optimization evidence should *not* have been admitted for corroboration purposes under Rule 404(b) ...................................................................... 9

        5.  Optimization evidence about obtaining separate and highly reimbursable prescription payments from insurance companies is insignificant to the government's case and indeed undermines its main theory that Mr. Hassan knew the pharmacists were illegally dispensing and distributing oxycodone in order to get cash payments .............................................................. 10

CONCLUSION..............................................................................................................................11

TABLE OF AUTHORITIES

**Cases**
Bonte v. U.S. Bank, N.A., 624 F.3d 461 (7th Cir. 2010) .............................................................. 2
United States v. Everett, 825 F.2d 658 (2d Cir. 1987) ................................................................. 9
United States v. Lange, 834 F.3d 58 (2d Cir. 2016) ..................................................................... 6
United States v. Nektalov, 461 F.3d 309 (2d Cir. 2006) ............................................................... 6
United States v. Rosa, 17 F.3d 1531 (2d Cir. 1994) ..................................................................... 2

**Rules**
Rule 29 ..................................................................................................................................... 5, 11
Rule 33 ............................................................................................................................... 1, 2, 5, 11
Rule 404(b)……………………………………………………………………….passim

**PRELIMINARY STATEMENT**

The government's response to Mr. Mohammed Hassan's post-trial motions is unavailing and shows why, at a minimum, a new trial should be granted. The government completely ignores one of Mr. Hassan's key arguments. The government further misstates the law regarding the conscious avoidance instruction and Rule 404(b). The Court should order a new trial to correct a manifest injustice—Mr. Hassan's conviction.

**ARGUMENTS**

**I.    THE GOVERNMENT IGNORES COUNSEL'S ARGUMENT THAT IT MISSTATED THE EVIDENCE IN SUMMATION; THERE, THE GOVERNMENT MADE THREE CLAIMS WITHOUT EVIDENCE THAT LED TO THE MANIFEST INJUSTICE OF MR. HASSAN'S CONVICTION**

   **A.    The Government Made Arguments In Summation That It Had <u>No</u> Evidence For**

As explicitly highlighted in Mr. Hassan's Rule 33 motion, the government misstated the evidence in its summation, saying that Mr. Hassan "was filling some of the Linden Medical prescriptions at one of the pharmacies" (Tr. 1910), that Mr. Hassan was like a chef who had "previously filled the problematic oxy scripts himself" (Tr. 1946), and that Bassam Amin ("Amin") "told you that [Mr. Hassan] saw [Michael Kent ("Kent")] bring cash for oxy at Nile RX" (Tr. 1913). *See* ECF No. 397 at 6. The record does <u>not</u> and <u>cannot</u> support these claims.

   **B.    In Its Response, The Government Ignores Counsel's Argument That It Misstated The Evidence In Summation**

The government does <u>not</u> even try to defend its statement about Amin's testimony. The government must know that it misstated the evidence in this regard, just as it knew or should have known at the time of trial. Notably, the government had slides showing specific transcript excerpts when referring to Amin's testimony on various points, but the government had <u>no</u> slide on Amin's testimony as to who was filling the Linden Medical prescriptions during the relevant time period.

1

The government also does not even try to explain or distinguish the cases that clearly hold that a prosecutor cannot misstate the evidence and cannot refer to facts not in evidence. *See, e.g.,* United States v. Rosa, 17 F.3d 1531, 1548-49 (2d Cir. 1994) ("It is clear, of course, that it is improper for a prosecutor to mischaracterize the evidence or refer in summation to facts not in evidence," and stating that reversal is warranted if the improper remarks cause a defendant substantial prejudice).

Instead, the government tries to just ignore Mr. Hassan's argument. In responding to Mr. Hassan's Rule 33 motion, the government describes Mr. Hassan's argument about evidentiary errors by referring to parts of his argument and simply ignoring the part about the government's misstatement. *See* ECF No. 409 at 21. Such silence is "deafening." Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) (finding that a party's "failure to respond to argument" "results in waiver").

C. **In Its Response, The Government *Again* Misstates The Evidence When It Claims That Mr. Hassan Personally Filled Linden Medical Prescriptions For More Than Fifty People**

In its response, the government *again* misstates the evidence and tries to distract the Court from its misstatements by making speculative inferences based on ambiguous evidence as it did three times in summation as noted above. The government claims in its response that "there was extensive evidence that Mr. Hassan *himself* filled oxycodone prescriptions from Linden Medical" (emphasis added). ECF No. 409 at 54. There is no citation or support for this.

To be sure, the government did offer into evidence "Nile RX prescription records," specifically two government summary charts based on such records (Gov Ex. 907 and 908). Id.[1] Nevertheless, the government's claim that the "Nile RX prescription records showed that *Hassan*

---

[1] These charts were based on the Bureau of Narcotics Enforcement data admitted into evidence (Gov Ex. 241). *See* Tr. 1414.

2

filled the prescriptions" for more than 50 people is simply <u>not</u> true (emphasis added). The Bureau of Narcotics Enforcement ("BNE") records track which *pharmacy* filled a prescription, but the BNE records do <u>not</u> track which *pharmacist* filled any prescription. *See* Tr. 785-790 (testimony about what the data covers).

One <u>cannot</u> make an assumption about which person specifically filled a prescription based on such records. As the Court may recall, BNE records showed that Forest Care Pharmacy filled some oxycodone prescriptions in 2022. The government presented surveillance footage showing that Yousef Ennab filled some. Furthermore, Ennab presented a stipulation that showed that another person at the pharmacist, Nerli Guardado, filled some. *See* Tr. 1890. The data is <u>not</u> enough on its own to support an inference as to which pharmacist at Forest Care filled a particular prescription. And it is <u>not</u> enough to support the government's assertions at trial and in its response that Mr. Hassan filled particular prescriptions at Nile RX especially when the evidence showed that at least three pharmacists worked at Nile RX—Mr. Hassan, Jalal Jibril, and another person. *See* Tr. 1228 and 1244; *see also* Gov. Ex. 294.

A closer look at one of the examples cited in the government's response also shows that the government makes unreasonable inferences based on the BNE records. First, there was <u>no</u> testimony or evidence about how prescriptions were picked up from Nile RX. Second, there was <u>no</u> surveillance footage like there was of Ennab and Omar Elsayed from the pharmacies in 2022. Third, there was <u>no</u> testimony from anyone who worked at Nile RX.

Data shows that Nile RX filled Dr. Somsri Ratanaprasatporn's prescriptions for four people on January 3, 2020. There was <u>no</u> evidence presented, however, about who picked up the prescriptions, who filled the prescriptions, and how payment was made for the prescriptions. The government assumes that Kent picked up all the prescriptions and paid cash to Mr. Hassan, but

3

there is no evidence of this. In fact, three of the four people have the same last name (Alice Mercer, Makisha Mercer, and Malika Mercer), and two have the same address (Alice Mercer and Makisha Mercer), undercutting the inference the government tries to draw—that it is a "red flag" for someone to pick up prescriptions for another.[2] Critically, if one of the Mercers picked up oxycodone for herself and her relatives, this wouldn't have been suspicious to the pharmacist who filled the prescriptions. The government's speculations about what happened on January 3, 2020 based solely on data are not enough and show the dangers in jumping to conclusions based on limited evidence.

### D. The Government's Misstatement Of The Evidence Clearly Led To A Conviction It Did Not Deserve And Led To A Manifest Injustice

The government made a powerful argument in summation that it had no evidence for, which clearly led to a conviction it did not deserve and led to a manifest injustice. *If* there were evidence showing that Mr. Hassan personally filled oxycodone prescriptions at Nile RX, personally gave the prescriptions to Kent, and personally received cash bribes for doing so, then the government would clearly establish Mr. Hassan's knowledge that Kent was working with Smith to get improper oxycodone prescriptions. There was no such evidence, and the government's improper speculations and mischaracterizations of the evidence were extremely prejudicial.

The government's summation misstatements demonstrate the weaknesses in its case regarding Mr. Hassan's knowledge. It presented no surveillance footage of Mr. Hassan interacting with Kent. The government played videos, however, of Amin, Elsayed, and Ennab transacting

---

[2] The government's other data example is wrong. The government states that the BNE data shows that Nile RX filled prescriptions for five different people on January 22, 2022. This is wrong in two ways. First, the data shows that Nile RX filled no oxycodone prescriptions in January 202**2**. Second, if the government meant to refer to January 22, 202**0**, data shows that Nile RX filled prescriptions for *seven* people, not five. The government's sloppiness here shows the dangers in trying to interpret data without additional evidence and context.

4

with Kent. Critically, there were <u>no</u> texts or recorded calls between Mr. Hassan and Kent or Mr. Hassan and Smith. The lack of evidence of Mr. Hassan's interactions with either Kent or Smith stands in stark contrast to that presented by the government against Amin, Elsayed, and Ennab in 2022. The government's attempts to point to ambiguous evidence on other issues—such as whether Mr. Hassan was the person whom Smith had a telephone call with sometime in 2019 or 2020, or Mr. Hassan's business practices related to oxycodone—amount to a distraction from the lack of evidence on the core issue.[3]

Ultimately, the government's evidence about Mr. Hassan's knowledge was too speculative to meet the standard required under Rule 29 and Rule 33. In any event, a new trial is warranted because of the government's misstatements on this key issue.

## II. THE GOVERNMENT MISSTATES THE LAW REGARDING THE CONSCIOUS AVOIDANCE INSTRUCTION AND RULE 404(B)

### A. The Government Misstates The Law Regarding The Conscious Avoidance Instruction

#### 1. The government sets up a straw-man version of counsel's argument

In responding to Mr. Hassan's argument about conscious avoidance, the government sets up a straw-man version of his argument and mischaracterizes the caselaw. The government's response is wrong when it suggests that Mr. Hassan argues that the government must choose between actual knowledge or willful blindness. It is also wrong when it suggests that an assertion of lack of actual knowledge is enough to trigger the conscious avoidance instruction. *See* ECF No. 409 at 47.

---

[3] The government also continues to assert that the person at Nile RX whom Smith had a conversation with in 2019 or 2020 must be Mr. Hassan. *See* ECF No. 409 at 5 (e.g., "Hassan spoke to Smith to tell her…"). As discussed in Mr. Hassan's Rule 33 motion, the evidence of this is weak and speculative, and the government's argument about this issue should be given little if any weight.

5

### 2. The government fails to address that a conscious avoidance instruction must meet a two-part standard

United States v. Lange, 834 F.3d 58 (2d Cir. 2016), sets forth the appropriate standard, which involves *two* parts. "A conscious avoidance instruction is warranted (i) when a defendant asserts the lack of some specific aspect of knowledge required for conviction and (ii) the appropriate factual predicate for the charge exists." Id. at 77-78, quoting United States v. Nektalov, 461 F.3d 309, 314 (2d Cir. 2006).

The key issue here is whether the factual predicate was sufficiently established. As stated in Lange, this requires more than a defendant contesting the government's claim of knowledge. "A factual predicate may be established where a defendant's involvement in the criminal offense may have been *so overwhelmingly suspicious* that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." 834 F.3d at 78 (citation and quotations omitted) (emphasis added).

### 3. Despite its claims, the government can not meet the two-part standard; it can not establish a factual predicate

The government claims that Mr. Hassan's assertions are "entirely belied by the record," but its citations to the record don't support this argument.

- Mr. Hassan said in his motion that there was "no evidence that Mr. Hassan filled any prescriptions." ECF No. 397 at 37. The government's response cites no eyewitness testimony or surveillance footage. Instead, the government points only to prescription data, which only tracked what *pharmacy* filled a prescription, not which *person* at the pharmacy filled the prescription. See ECF No. 409 at 11.

- Mr. Hassan said in his motion that there was "no evidence that he interacted with Kent about improper prescriptions." ECF No. 397 at 6-7. The government's response points to a text message in which Mr. Hassan refers to talking with Kent about sending four new patients, but there is no evidence that Mr. Hassan knew or had reason to know that Kent was filling improper oxycodone prescriptions. In fact, there was no evidence about the content of the conversation. The government's theory about what was discussed is just a *theory*. Mr. Hassan may well have believed that Kent was recommending Downtown RX to friends or

6

    relatives or employees. The government's response also points to a picture of a Post-it note that Elsayed texted Mr. *Mohamed* Hassan and Mr. *Mohamed* Saleh, Elsayed's silent partners. The government's response, however, completely ignores subsequent messages that show that Mr. Hassan likely assumed that the note was left by someone who was "confused" and "looking for another Mohamed," as Mr. Saleh wrote in the same chain. *See* ECF No. 409 at 11-12, 29, and 49.

- Mr. Hassan said in his motion that there was "no evidence that he interacted with Smith about any prescriptions other than Myrtle Caldwell." ECF No. 397 at 37. The government's lack of a response is deafening.

- Mr. Hassan said in his motion that there was "no evidence that he knew that Smith was issuing prescriptions without Dr. Ratanaprasatporn's knowledge or authorization." ECF No. 397 at 37. Again, the government's silence is deafening. Significantly, the government's response confuses oxycodone prescriptions with prior authorizations for other medications. The government asserts in its response that there was evidence that Mr. Hassan knew that Smith was writing prescriptions, but all the evidence referenced in footnote 4 is about prior authorizations, not oxycodone prescriptions. *See* ECF No. 409 at 26.

The government's response also points to a February 2, 2020 message that Mr. Hassan sent to the Pharmacists United chat group. Mr. Hassan did discontinue filling Dr. Ratanaprasatporn's prescriptions in 2020, but there was no evidence presented as to why, and there was no evidence presented as to what he believed *two years later*. Significantly, the government's response ignores part of Mr. Hassan's 2020 message. His message did not state that he believed that oxycodone prescribed by Dr. Ratanaprasatporn was being diverted. Instead, he recommended that pharmacists be "diligent in doing PMP checks and id verifications" if they wanted to continue working with patients from her office. *See* Gov Ex. 617. If a pharmacist was diligent in doing ID verifications, he would not dispense oxycodone to another person who came to pick up a person's prescription.

Overall, the February 2020 message *might* establish a sufficient factual predicate for improper prescriptions filled at that time without PMP checks or ID verifications and that Mr. Hassan knew were filled without PMP checks or ID verifications. Yet, it does not provide a sufficient basis to find that the circumstances that Mr. Hassan observed *two years later* were so

7

"overwhelming suspicious" to warrant the instruction. Lange, 834 F.3d at 78 (citation and quotations omitted).

B.   **The Government Misstates The Law Regarding Rule 404(b)**

The government's response regarding Rule 404(b) fails to address the massive discrepancies and inconsistencies that unfolded before and during trial.

1.   **The government sets up another straw-man version of counsel's argument**

The government again attacks a straw-man version of Mr. Hassan's argument. Mr. Hassan doesn't dispute that his dealings with Smith about optimization were admissible, and he doesn't dispute that his dealings with Amin about oxycodone were admissible. Mr. Hassan, however, disputes the government's use of evidence regarding his involvement with other pharmacies and his instructions regarding doctors other than Dr. Ratanaprasatporn.

2.   **Optimization evidence should not have been admitted as "inextricably intertwined" under Rule 404(b)**

The optimization evidence involving other doctors and other pharmacies would be admissible only if it was direct evidence, inextricably intertwined evidence, or admissible under Rule 404(b). Before trial, the Court properly rejected this evidence as direct or inextricably intertwined evidence. Perplexingly, the Court then said that the evidence was admissible under Rule 404(b) because it was *inextricably intertwined*. These positions contradict each other and show that "inextricably intertwined" should not have been a basis for admission and would have confused the jury.

3.   **Optimization evidence should not have been admitted as background information under Rule 404(b)**

Furthermore, as noted in Mr. Hassan's motion, he didn't dispute that information about his dealings with Smith and Amin could have been admissible as background information, but

8

evidence involving other doctors and other pharmacies has <u>no</u> use as background information here. *See* ECF No. 397 at 29.

### 4. Optimization evidence should <u>not</u> have been admitted for corroboration purposes under Rule 404(b)

In terms of the government's argument that the evidence is admissible to corroborate the testimony of other government witnesses, the government cites a case that actually *warns* against what the government did here. <u>United States v. Everett</u>, 825 F.2d 658 (2d Cir. 1987) warned about how claims of "corroboration" could be abused.

> Under Rule 404(b) evidence of "other crimes" has been consistently held admissible to corroborate crucial prosecution testimony. But the prosecution is not permitted to wholesale proof into evidence under the guise of "corroboration purposes". The notion that the more other crimes evidence the prosecution is permitted to introduce, the more it is entitled to get in is misguided. Hence, to avoid potential prosecutorial abuse, we have required the proponent of the evidence to demonstrate a close relationship between the proffered evidence and the evidence to be corroborated. Other crimes evidence, therefore, is only admissible for corroborative purposes, if the corroboration is direct and the matter corroborated is significant …
>
> "Significant" evidence is usually understood to mean important—as distinct from trivial—evidence in a trial. As such, that concept is well enough understood so as to need no citation. …
>
> "Direct" corroborating evidence is evidence that is not wholly disconnected, remote, or collateral to the matter corroborated. In other words, if the chain of inferences necessary to connect the corroborative evidence to the ultimate fact to be proven is too lengthy, the evidence is not *directly* corroborative; the reason is that the connection between the corroborative proof and the ultimate fact that the prosecution must prove beyond a reasonable doubt becomes too attenuated and thereby weakened in probative value. In such a case, its admission as "other crimes" evidence is much more likely to adhere unfairly to defendant without the justifying presence of probativeness on an issue other than propensity.

<u>Id</u>. at 660-61 (internal citations and quotations omitted).

9

### 5. Optimization evidence about obtaining separate and highly reimbursable prescription payments from insurance companies is insignificant to the government's case and indeed undermines its main theory that Mr. Hassan knew the pharmacists were illegally dispensing and distributing oxycodone in order to get cash payments

Accordingly, Rule 404(b) evidence cannot simply be admitted under a broad, vague claim that it corroborates government witnesses. The key issue in this case was whether Mr. Hassan knew that pharmacists he was associated with were providing oxycodone to Kent based on prescriptions in other people's names and in exchange for cash from Kent.

Whether Mr. Hassan engaged in the optimization of patient maladies to get separate and highly reimbursing prescription payments from insurance companies is <u>not</u> a significant issue. Optimization may provide evidence of motive for health care fraud, but here, it directly contradicts the government's main theory—that pharmacists were illegally dispensing and distributing oxycodone in order to get cash payments. Patients who pay cash generally don't have insurance, and thus they don't have insurance which will cover prescriptions that are optimized.

The only patient whom the government specifically presented optimization evidence about in this trial was Myrtle Caldwell. Ms. Caldwell was actually seen by Dr. Ratanaprasatporn and she had <u>no</u> connection with Kent. Even if Mr. Hassan did something wrong in seeking to "optimize" Ms. Caldwell as a patient by requesting additional medications, this has <u>no</u> significance in terms of other patients. The Pharmacists United chats regarding optimization were <u>not</u> significant in this case, and they required too much speculation to be directly corroborative of any significant issue.

Overall, the admission of the Pharmacists United chats under Rule 404(b) was improper and served to confuse the issues at trial.

10

## CONCLUSION

The Court can and should find that the government's case against Mr. Hassan was based on speculation and unreasonable inferences and is insufficient as a matter of law under Rule 29. The Court, however, does <u>not</u> need to go that far in terms of granting Mr. Hassan's motion for a new trial under Rule 33.  The government's multiple misstatements of evidence in summation unduly prejudiced Mr. Hassan and warrant a new trial.  Indeed, the government's failure to even respond to this argument demonstrates the import of this issue.

Accordingly, for the reasons stated herein and in his original motions, this Court can and should grant Mr. Hassan a new trial, if not an acquittal.

Dated: July 3, 2025
New York, NY

                                             Respectfully submitted,

                                             Varghese & Associates, P.C.
                                                           /s

By:    Vinoo P. Varghese
          Stephen Chahn Lee (*of counsel*)
          Dennis J. Ring (*of counsel*)

*Counsel for Mr. Mohamed Hassan*